UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADAM J. DOYON,

                Plaintiff,

   v.                                     **DECISION AND ORDER**
                                                          **03-CV-0419**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

      1.      Plaintiff Adam J. Doyon challenges an Administrative Law Judge's ("ALJ") determination that he is not entitled to disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges he has been disabled since January 1, 2000, because of a bilateral hearing loss and affective disorder.[1] Plaintiff met the disability insured status requirements of the Act at all times pertinent to this claim.

      2.      Plaintiff filed an application for DIB and SSI on June 13, 2001. His application was denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ. See 65 Fed. Reg. 81553 (Dec. 26, 2000). Pursuant to Plaintiff's request, an administrative hearing was held on July 17, 2002, before ALJ J. Lawson Brown, at which time Plaintiff and his non-attorney advocate appeared. Plaintiff's parents were present to observe the

---

[1] Affective disorders are characterized by dramatic changes or extremes in mood. *Encyclopedia Britannica Online,* (2007).

1

hearing, also.  The ALJ considered the case *de novo*, and on July 29, 2002, issued a decision finding that the Plaintiff was not disabled.  On February 14, 2003, the Appeals Council denied Plaintiff's request for review.  However, Plaintiff submitted additional evidence from one of his treating physicians on January 2, 2003.  This evidence was reviewed by the Appeals Council subsequent to its February 14, 2003 denial of Plaintiff's request for review of the ALJ's decision.  On June 10, 2003, the Appeals Council advised Plaintiff it had considered the additional evidence, but declined to disturb the ALJ's decision on the basis that the additional evidence did not establish Plaintiff was under a disability and could not return to his past relevant work as a store clerk.

3.    On April 3, 2003, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB and SSI benefits to Plaintiff.[2]  The Defendant filed an answer to Plaintiff's complaint on July 24, 2003, requesting the Court to dismiss Plaintiff's complaint.  Plaintiff submitted a Memorandum of Law in Support of Plaintiff's Complaint and Motion for Judgment on the Pleadings on August 18, 2003.  On November 3, 2003, Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment

---

[2] The ALJ's July 29, 2002, decision became the Commissioner's final decision in this case when the Appeals Council, after review of Plaintiff's additional evidence, declined to disturb the ALJ's decision.

2

on the Pleadings[3] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work active-ties.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gain-ful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally,

4

> if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits as set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision (R. at 19);[4] (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (R. at 19); (3) Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(b) (R. at 19); (4)

---

[4] Citations to the underlying administrative are designated as "R."

These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. at 19); (5) Plaintiff's allegations regarding his limitations were credible for the reasons set forth in the body of the decision (R. at 20); (6)  The ALJ carefully considered all of the medical opinions in the record regarding the severity of Plaintiff's impairments (20 C.F.R. §§ 404.1527 and 416.927) (R. at 20); (7) Plaintiff has the residual functional capacity for work at all exertional levels, however, he would have some difficulty interacting appropriately with co-workers and supervisors (R. at 20); and (8) Plaintiff is able to perform his past relevant work as a store clerk (20 C.F.R. §§ 404.1565 and 416.965 (R. at 20). Ultimately, the ALJ determined Plaintiff was not under a disability, as defined by the Act, at any time between his alleged onset of disability through the date of the decision (R. at 20).

10. Plaintiff's first challenge to the ALJ's decision is that the ALJ erred in finding Plaintiff's combination of impairments did not meet or medically equal in severity a listed impairment in Appendix 1 to 20 C.F.R Part 404, Subpart P, Regulation No. 4.  Specifically, Plaintiff claims his mental impairments and hearing loss are so severe that he is unable to function without the constant assistance and support of his parents and a job coach or other supervisor.  Thus, Plaintiff asserts he should be considered disabled with an organic mental disorder within the meaning of Appendix 1to 20 C.F.R. Part 404, Subpart P § 12.02(C)(3).

Listing 12.02(C) identifies the conditions that must exist for a person to be found disabled with an organic mental disorder. There must be:

> C. Medically documented history of chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psycho-social support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history or 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
> 20 C.F.R. Part 404, Subpart. P, App.1, § 12.02(C).

In his brief, and in his testimony before the ALJ, Plaintiff alleges he is unable to function outside a highly supportive living arrangement. He notes he is incapable of paying his bills, getting to work on time, cleaning his residence, or tending to his personal hygiene without parental support (R. at 26-29). See Plaintiff's Brief, p. 5. Plaintiff points to his medical evidence as objective support for his claim that he is unable to function outside a highly supportive living arrangement. As an example, Plaintiff notes his full scale IQ score of 84 is in the below-average range of cognitive functioning (Plaintiff's Brief p. 5, R. at 139). Most of his subtests were in a "relatively restrictive range" (R. at 139). Plaintiff's psychologist assessed Plaintiff as having noticeable problems with subtests that measured short-term memory, rote auditory memory, visual abstract reasoning, and perceptual motor organization and synthesis skills. Id.

Plaintiff further notes he was diagnosed with depression secondary to his hearing loss; however, Plaintiff's depressive symptoms were in partial remission at the time of this diagnosis (R. at 159). Plaintiff was later diagnosed with depression, social anxiety disorder, hearing loss, and learning disorders, and his psychiatrist opined his ability to function in the workplace was greatly hampered by these disorders (R. at 186-188). Thus, Plaintiff claims the ALJ was in error when he failed to find Plaintiff disabled by an organic mental disorder as defined in 20 C.F.R Part 404, Subpart. P, App. 1, § 12.02(C)(3).

The ALJ considered the evidence cited by Plaintiff supporting his contention that he was disabled by hearing loss and organic mental disorder, as well as evidence in Plaintiff's record that would support his ability to engage in regular work activity. The ALJ noted Plaintiff had bilateral hearing loss since birth, but had attended and graduated from regular schools (R. at 17, 25). He also observed Plaintiff had no difficulty speaking or being understood (R. at 17, 25-41). Plaintiff's audiologist, Lynn Tusa, M.A., performed a hearing test on Plaintiff on March 6, 2000. Ms. Tusa noted Plaintiff was generally stable academically and was attending training on a half-time basis through the Board of Educational Services (BOCES) for graphic arts and visual communication arts (R. at 115). Ms. Tusa observed Plaintiff was "quite functional auditorially," but was not always aware of confusion or comprehension-related problems when he was given oral input or directives. Id. She found Plaintiff had excellent speech recognition and

8

discrimination at adequately loud listening levels, and he derived great benefit from the use of a single hearing aid. Id. Ms. Tusa recommended Plaintiff continue to use his hearing aid, maintain proper functioning amplification, and referred him to the Office of Vocational and Educational Services for Individuals with Disabilities (VESID) to obtain additional assistance with vocational training and job opportunities (R. at 116).

Plaintiff was examined by a psychologist, Dr. Paul Etu, Psy.D, on February 23, 2001, to determine if Plaintiff had lingering effects from childhood head traumas, or if he had a psychiatric illness (R. at 137). Dr. Etu performed a battery of tests on Plaintiff and observed he presented as a "very friendly, right-handed individual who had a noticeable articulation problem, not unlike someone with a degree of hearing impairment" (R. at 138). The psychologist observed Plaintiff was dressed appropriately for the situation, put forth good effort throughout the testing, and had a reasonable degree of insight into his difficulties. Id. Plaintiff's full-scale score of 84 on the WAIS-III-NI was below average, and the psychologist noted Plaintiff had difficulty with tests that measured perceptual organization ability and working memory (R. at 139). However, Plaintiff did better on tests measuring processing speed and verbal comprehension, and scored at the lower end of the average range. Id. Plaintiff scored within the average range on subtests that measured arithmetic reasoning, active vocabulary, psychomotor speed, verbal abstract reasoning, and social comprehension. Id. Dr. Etu opined Plaintiff was not at risk for significant depressive symptomatology, and had no signs of major

neuropsychological dysfunction (R. at 140-141).  While Dr. Etu believed Plaintiff would have some difficulty interacting with others, he though Plaintiff could do well in a "hands on" vocational position (R. at 141).

Plaintiff was examined by State agency consultant, Gina Scarano-Osika, Ph.D., on September 28, 2001 (R. at 156-159).  At the time of the examination, Dr. Scarano-Osika noted Plaintiff was working at two part-time jobs, although he reported to the doctor that he had given notice to one employer because he was working too many hours (R. at 157).  Plaintiff told the doctor he had never been fired from a job, and had quit working at the Price Chopper market after two years because the hours were erratic and it was not full time employment.  Id.  Plaintiff reported to Dr. Scarano-Osika that he felt able and desired to work full time.  Id.  Plaintiff told the doctor he suffered from intermittent depression since his teen years, but that he had no sleep or appetite difficulties.  Id.   Plaintiff was never hospitalized or placed on medication for a psychiatric condition, although he reported he had been in outpatient mental health counseling for one week at the time of the examination by Dr. Scarano-Osika.  Id.  The doctor assessed Plaintiff's full scale on the WAIS-III at 87, three points higher than his examination by Dr. Etu in February 2001 (R. at 139, 158).  Dr. Scarano-Osika noted Plaintiff's strengths were his ability to respond appropriately to social situations and perform speeded tasks; however, Plaintiff showed deficiencies in his ability to coordinate visual-motor material, and in his ability to complete numerical processes (R. at 159).  The doctor recommended Plaintiff continue with his

10

mental health treatment since his depressive symptoms seemed to be falling into remission, and suggested that his treatment focus on enhancing his self-esteem and vocational functioning. Id.

On October 24, 2001, Plaintiff's medical records were evaluated by State agency physician Dr. Arlene Reed-Delaney. Dr. Reed-Delaney completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment (R. at 160-163, 164-177). While Dr. Reed-Delaney did not examine or treat Plaintiff, it is well settled that an ALJ may rely upon the opinions of the state agency's medical and psychological consultants, since they are deemed to be qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2). This Court finds such reliance is particularly appropriate where, as here, the opinion of the State agency physician and psychologist is supported by the weight of the evidence, including the findings upon examination and testing of Plaintiff's own treating psychologist.

In this matter, Dr. Reed-Delaney examined Plaintiff's medical records and determined Plaintiff had a depressive disorder, secondary to hearing loss, in partial remission (R. at 167). The doctor opined Plaintiff had no restriction of activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two repeated episodes of deterioration of extended duration (R. at 174). Based on Plaintiff's medical evidence, Dr. Reed-Delaney opined

11

Plaintiff had neither an organic mental disorder nor an affective disorder that would meet or exceed the criteria required for diagnosis of such disorders set forth in sections 12.02 (Organic Mental Disorder), or 12.04 (Affective Disorder), of 20 C.F.R. Part 404, Subpart. P, App. 1, §§ 12.02, 12.04 (R. at 164-176).

Dr. Reed-Delaney also completed a Mental Residual Functional Capacity Assessment of Plaintiff (R. at 160-162).  She assessed Plaintiff as having a depressive disorder, secondary to hearing loss, but in partial remission (R. at 160).  The doctor noted Plaintiff manifested some subtle neurological deficits as indicated by his psychological testing that may interfere with his ability to maintain concentration and persistence, as well as interfere with his ability to understand and carry out detailed instructions (R. at 161).  Other than in these specific areas, Dr. Reed-Delaney opined Plaintiff was not significantly limited in his mental residual functional capacity (R. at 160-161).

Plaintiff's treating psychiatrist, Dr. Robert Harnick, submitted a psychiatric report to the Social Security Administration dated February 4, 2002 (R. at 186-188).  In his assessment, Dr. Harnick diagnosed Plaintiff with depression, social anxiety disorder, learning disorder, and bilateral hearing loss (R. at 186).  Dr. Harnick noted he treated Plaintiff from "4/30/01 to present," but failed to note the frequency of treatment (R. at 186).  The psychiatrist disclosed he had started Plaintiff on the drug Paxil on January 15, 2002 (17 days before the date of the Psychiatric Report), and no side effects

were noted.  Id.  Dr. Harnick assessed Plaintiff with limitations such as poor social skills, cognitive defects, and poor attention and concentration (R. at 187).  He also noted Plaintiff was very dependent on others.  Id.  While the psychiatrist assessed Plaintiff as having no ability to make occupational adjustments, such as understanding, carrying out, and remembering instructions, and responding appropriately to supervisors and co-workers, Dr. Harnick did opine that Plaintiff needed a stable, routine work environment (R. at 188).

Upon review of Plaintiff's medical and employment records, the ALJ gave little weight to Dr. Harnick's opinion (R. at 18).  At the time of Plainitff's visits with Dr. Harnick (as well as through the date of his hearing before the ALJ and submission of the ALJ's decision), Plaintiff was employed in his regular occupation as a clerk in a grocery store (R. at 18, 25-26). Employment counselors who followed up with Plaintiff both at his job and at his home noted few problems (R. at 191-212).  As an example, Plaintiff's counselor at Alpha Industries Supported Employment Program, Ms. Nancy Powhida, noted occasional customer complaints and concerns from Plaintiff's supervisors, but also wrote that Plaintiff was generally industrious, cooperative, and had many days where his supervisors reported no problems (R. at 201-213).  Plaintiff's case manager at Saratoga ARC, Mr. Eric Sicard, generally met with Plaintiff at Plaintiff's residence.  At most meetings, Plaintiff reported he was doing "okay," and that things were "fine" (R. at 192-194). Plaintiff reported to Mr. Sicard he had a girlfriend who stayed with him

13

sometimes (R. at 192).  From the case notes, it appears Mr. Sicard's most frequently reported concern about Plaintiff was Plaintiff's lack of attention to keeping his home neat and clean (R. at 192-194).

The ALJ also considered Plaintiff's activities of daily living when making his determination that Plaintiff was not under an organic mental disability as defined in 20 C.F.R. Part 404, Subpart P, App. 1, § 12.02(C)(3) during the relevant time period for his claim (R. at 18-19).  Plaintiff testified at his hearing that he lived alone in a mobile home, did his own grocery shopping, and had a driver's license (R. at 26-27).  Plaintiff reported he had a checking account and paid his own bills, although he had assistance from his parents with his financial transactions (R. at 28).  He stated he had friends and went out with them occasionally (R. at 32).  In his written questionnaire for the New York State Office of Temporary and Disability Assistance, Plaintiff claimed he did household chores, went bike riding, and spent time with his girlfriend (R. at 91).  Plaintiff reported he could use public transportation, but did not, because the bus schedule was incompatible with his work schedule (R. at 92).  The ALJ considered such daily activities not indicative of physical or mental disability for purposes of entitlement to a period of DIB and/or SSI (R. at 19).

Based on the information presented above, this Court finds no reversible error in the ALJ's determination that Plaintiff was not disabled within the meaning of the Act during the relevant time period for Plaintiff's claim.  The ALJ considered Plaintiff's hearing and affective disorders and

considered them severe impairments within the meaning of the Act, but not so severe that Plaintiff's condition would render him disabled under the criteria established in 20 C.F.R Part 404, Subpart P, App. 1, § 12.02(C)(3).  The ALJ reviewed the evidence presented by Plaintiff's treating audiologists, psychologist, and psychiatrist , the assessments of Plaintiff's consultative psychologist and the State agency physicians, the reports of Plaintiff's job counselors, as well as Plaintiff's own testimony about his activities of daily living, and ultimately predicated his disability determination on the consistent medical and behavioral opinions contained in the record.  It is the sole responsibility of the ALJ to weigh all evidence and resolve any material conflicts in the record.  See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).  Thus, the ALJ appropriately gave less weight to the assessment of Dr. Harnick regarding Plaintiff's limitations, and more weight to the consistent medical and behavioral evidence supporting Plaintiff's ability to engage in regular work activity, when determining that Plaintiff was not entitled to a period of DIB and/or SSI benefits.

    11.    Plaintiff's second challenge to the ALJ's decision is his claim that the ALJ erred in finding Plaintiff capable of performing his past relevant work, or any other work, on a sustained basis as it exists in the national economy. In his brief, Plaintiff asserts he is incapable of performing his past work as a grocery store clerk, or any other work, because his mental impairments render him unable to deal with the pressures of a work setting.  See Plaintiff's

Brief, p. 6.  Plaintiff notes he had been fired from three positions because he failed to call his supervisor in a timely manner when he was sick, did not follow directions from his supervisors, was late to work, argued with or ignored customers, vandalized store property, and dressed inappropriately for his job.  Id.

In determining that Plaintiff was capable of performing his past relevant work as a store clerk during the relevant time period for his claim, the ALJ considered Plaintiff's medical records, his work history and the written records of his job coaches, Plaintiff's testimony at his hearing and his activities of daily living, as well as the results of Plaintiff's Psychiatric Review Technique form, his Mental Residual Functional Capacity Assessment, and his Physical Residual Functional Capacity Assessment (R. at 160-185).  As discussed in Section 10 above, an ALJ may rely upon the opinions of the state agency's medical and psychological consultants, since they are deemed to be qualified experts in the field of Social Security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2).  State agency physician Dr. Reed-Delaney diagnosed Plaintiff with a depressive disorder, secondary to hearing loss, in partial remission, and as a result of these impairments, assessed Plaintiff as having moderate difficulties in maintaining concentration, persistence of pace, and possibly one or two repeated episodes of deterioration (R. at 167, 174).  In his Physical Residual Functional Capacity Assessment, a State agency medical consultant noted Plaintiff had a history of hearing loss, but had excellent

speech discrimination (R. at 179). The consultant reported Plaintiff used a telephone amplifier for his claimant conference. Id. Upon examination of Plaintiff's medical records, the consultant noted Plaintiff's physicians had not restricted Plaintiff's physical abilities (R. at 184). The consultant opined that other than communicative limitations stemming from his hearing loss, Plaintiff had no other limitations of his physical residual functional capacity (R. at 178-185).

Based on his analysis of all available evidence, the ALJ opined Plaintiff had moderate limitation in social functioning, mild limitation in maintaining concentration, persistence or pace, and no episodes of decompensation or deterioration in work or work-like settings (R. at 18). The ALJ also opined that as a result of his impairments, Plaintiff had mild limitation of activities of daily living. Id. The ALJ considered all of Plaintiff's symptoms, including pain, and the extent to which Plaintiff's impairments could reasonably be expected to produce the symptomatology and limitations Plaintiff alleged. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. He also reviewed Plaintiff's activities of daily living to ascertain the limits that Plaintiff's impairments placed on his daily activities (R. at 19). The ALJ assessed Plaintiff as capable of returning to his past relevant work as a store clerk based on 1) Plaintiff's mild non-exertional limitations, 2) the opinion of Plaintiff's treating psychologist that Plaintiff would do well with a "hands-on" position, and 3) Plaintiff's statements to a State agency psychologist that he

felt "able to work and desires to work" and that he left a position because it was not full-time employment (R. at 19, 141, 157).

This Court finds Plaintiff's argument that the ALJ erred in finding Plaintiff capable of returning to his past relevant work not supported by the record. As discussed above, Plaintiff's limitations and symptomatology attributable to his impairments were relatively mild. He engaged independently in broad and varied activities of daily living. Plaintiff not only could work as a store clerk, but did work as a store clerk, both before and during the time frame relevant to this claim (R. at 73). While this Court recognizes that Plaintiff's employment was part-time and his wages did not rise to the level of substantial gainful activity, Plaintiff's employment was clearly indicative of his ability to work on a regular basis. The ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony concerning his limitations, present an explicit summary of his evaluation, and render an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 19). See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984). Thus, this Court finds no reversible error in the ALJ's determination that Plaintiff retained the residual functional capacity to return to his past relevant work as a store clerk.

16. After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to this

Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, consultative examiner, and State agency medical consultant, and afforded Plaintiff's subjective claims of limitation by his impairments an appropriate weight when rendering his decision that Plaintiff is not disabled.  This Court finds no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

    IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

    FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

    FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

    SO ORDERED.

Dated:  October 10, 2007
    Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge